USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/15/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

J.L., on behalf of J.P., et al.,

                                 Plaintiffs,

             -against-                             **17-CV-7150 (JPC) (KHP)**

NEW YORK CITY DEPARTMENT OF                        **OPINION AND ORDER**
EDUCATION, et al.,

                                 Defendants.

-------------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge:**

       This case concerns the special education needs of severely disabled children who rely on

a variety of services to attend school.  Plaintiffs are the parents of three students who claim the

Department of Education's practices, policies and procedures governing the services it must

provide by law to medically fragile children are inadequate and have resulted in children being

denied a "free and appropriate public education" and violations of federal and state law.  In

particular, DOE allegedly failed to provide appropriate nursing, transportation and porter

service to the students, causing them to miss significant time from school.  Plaintiffs contend

the DOE has violated the Individuals with Disabilities Education Act, New York Education Law,

the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1983.  *J.L. on behalf*

*of J.P. v. New York City Department of Education*, 324 F. Supp.3d 455 (S.D.N.Y. 2018).

       Fact discovery has been completed but for one remaining dispute over 18 documents

the DOE has withheld as privileged and which the Court has reviewed *in camera*.  The

documents are all withheld on the basis of attorney-client privilege and/or attorney work

product.  The challenged documents are emails between and among various employees of the

DOE, including lawyers for the DOE, that were either forwarded to or included individuals from

1

nursing or porter services contractors to the DOE, specifically United Staffing Solutions ("USS") (which assists the DOE in finding nurses and other professionals needed to serve students), RCA Ambulance Services ("RCA"), which provides medical transport care for students between school and home, and Theracare, a multi-service healthcare, rehabilitation, developmental and educational organization that provides teaching and therapy services to children and services coordination for children in the public school system.

Plaintiffs contend that disclosure of the communications to individuals from USS, RCA, and Theracare constitutes a waiver of any privilege. DOE argues the individuals from USS, RCA, and Theracare are the functional equivalent of employees and, thus, their inclusion in privileged communications does not result in a waiver of attorney-client privilege.

**LEGAL STANDARD**

1. **Attorney-Client Privilege**

The attorney-client privilege protects lawyer-client communications for the purpose of obtaining or providing legal advice that were intended to be and in fact kept confidential. *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The privilege is construed narrowly because it blocks the discovery of relevant information. *Id*.; *see also Fisher v. United States*, 425 U.S. 391, 403 (1976). The party asserting the privilege bears the burden of establishing privilege. *Mejia,* 655 F.3d at 132.

Including a person outside of the attorney-client relationship in a communication can result in a waiver of privilege, as can disclosure of a communication to such a person. *Id*.; *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, *6 (S.D.N.Y. Mar. 19, 2019). However, the Second Circuit has held no waiver will result if the third party is important to the provision of

legal advice to the client.  For example, an outside professional such as an accountant or an interpreter might be necessary or highly useful to ensure an effective communication between the lawyer and client.  In these circumstances, it has extended the privilege to cover such communications even though they include a non-party to the attorney-client relationship.  *See, e.g., United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).  Relatedly, courts within the Second Circuit recognize that non-lawyer advisors to corporate parties may be the "functional equivalent" of an employee and have extended the attorney-client privilege to cover communications that include such advisors.  *In re Sampedro*, 2019 WL 157092, *4 (S.D.N.Y. Jan. 10, 2019), *objections overruled*, 2019 WL 7207361 (D. Conn. Dec. 27, 2019), *aff'd sub nom. Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14 (2d Cir. 2020), *as amended* (June 5, 2020) (G3M employees were functional equivalent of Codere employees where Codere submitted affidavits establishing that G3M employees were incorporated into the Codere structure through appointments to positions including CEO of Codere).

To determine if a consultant is the functional equivalent of an employee, courts have looked to a number of factors, including whether the consultant: (1) had a primary responsibility for a key corporate job; (2) had a continuous and close working relationship with the company's principals on matters critical to the company's position in litigation; (3) is likely to possess information possessed by no one else at the company; (4) exercised independent decision-making on the company's behalf; (5) served as a company representative to third parties; and (6) sought legal advice from corporate counsel to guide his or her work for the company.  *Walsh v. CSG Partners, LLC*, 544 F. Supp. 3d 389, 392 (S.D.N.Y. 2021) (collecting cases).  The focus of the inquiry is whether the contractor is "so fully integrated into the"

company (or here, the municipal agency) that it can be considered a de facto employee. *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 114 (S.D.N.Y. 2005). The cases show that this is a fact-intensive question that typically requires presentation of evidence. *See, e.g. In re Sampedro*, 2019 WL 157092, at *4 (relying on affidavits). The bar is high to meet this standard and courts often decline to extend the attorney-client privilege to communications with consultants. *See, e.g., Walsh*, 544 F. Supp. 3d at 392 (holding investment bankers were not the functional equivalent of employee of investment bank client); *Exp.-Imp. Bank of the U.S.,* 232 F.R.D. at 114 (holding a financial advisor was not the functional equivalent of a company employee because the advisor's "schedule, the location of his head offices, and the success of his consulting business" contradicted the allegation he was "so fully integrated into the APP hierarchy as to be a de facto employee of APP"); *but see In re Copper Mkt Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (functional equivalent doctrine was met where a third-party public relations consultant was "essentially[] incorporated into" the corporation's staff to perform a corporate function that was necessary in the context of the government investigation).

## 2. **Attorney Work Product**

Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that documents and tangible things prepared by a party or its representative in anticipation of litigation are protected under the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,* 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (if a document "was prepared because of the prospect of litigation," it is eligible for work product protection) (citing *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998)); *see also Hickman v. Taylor,* 329 U.S. 495 (1947)

(establishing and articulating the application of the work product doctrine). The key factor in determining applicability of this doctrine is whether the documents or things were prepared "with an eye toward" or "in anticipation of" litigation. *Hickman*, 329 U.S. at 498, 508; *see also Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); *Adlman*, 134 F.3d at 1202. In other words, the court must determine if the materials would have been prepared in essentially similar form irrespective of the litigation. *Schaeffler*, 806 F.3d at 39.

Unlike the attorney-client privilege, work product protection is not waived merely because the material is disclosed to a third party. *See, e.g., Adlman,* 134 F.3d at 1200 n. 4 (work product may be shown to others "simply because there [is] some good reason to show it" without waiving the protection). Protection is waived only when work product is disclosed to a third party in a manner that is inconsistent with the purpose of the protection. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235-36 (2d Cir. 1993); *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *9 (E.D.N.Y. Mar. 31, 2017) (disclosure that substantially increases the opportunities for potential adversaries to obtain the information results in a waiver of work product protection); *In re Visa Check/MasterMoney Antitrust Litig.,* 190 F.R.D. 309, 314 (E.D.N.Y. 2000) (purpose of work product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him").

### 3.  Segregating/Redacting Non-Privileged Portions

When privileged communications are mixed with non-privileged communications, the producing party can sometimes redact those portions that are privileged and produce the non-privileged portions. However, "where protected work product is so closely intertwined with unprotected material that the two categories of material cannot be easily separated," the Court

will allow the entire communication to be withheld.  *Am. Oversight v. United States Dep't of Just.,* 45 F.4th 579, 597-98 (2d Cir. 2022).

## ANALYSIS

Nine of the eighteen email chains concern a student in litigation with the DOE about its provision of services to the student.  These nine email chains concern obtaining and providing transportation and nursing services to the student.[1]  Within the email chains, legal advice is conveyed as is information about threatened litigation and court orders relating to the transportation and nursing needs of the student.  While the communications involve logistics of arranging for transportation and nursing as well as complications encountered in providing services that were required, the communications would not have been prepared in the same way but for the litigation.  Thus, portions of the chains are also work product.  Individuals from the RCA are included on some portions of the chain.  Defendant has not demonstrated that the RCA employees are the functional equivalent of employees as there is no evidence that they were responsible for a key corporate job; rather, it appears that individuals from the DOE reached out to their dedicated contacts at RCA when needed to address the particular needs of particular students.  The DOE has internal employees whose job it is to ensure appropriate service providers are engaged for special circumstances, and RCA is no doubt a key partner in assisting the DOE to fulfill its obligations, but there is no evidence its employees are serving key DOE positions.  There is similarly no evidence that RCA employees exercised independent decision making for the DOE.  Rather, they provided specialized services when required based

---

[1] These are documents ending in 293909, 324534, 325310, 344592, 344807, 345468, 345470, 354918, and 354939.

on DOE specifications.  There is no evidence that RCA employees possessed information that

DOE employees did not; rather, DOE employees provided critical information about particular

student's needs and DOE's requirements to RCA, who then provided the specified services.

There similarly is no evidence that individuals from RCA sought legal guidance from DOE's legal

department in connection with the student's needs; rather, RCA reacted to questions from DOE

about what services it could provide to meet the DOE and student needs.  Further, as Plaintiffs

point out, in one email chain the DOE did produce, DOE's attorneys expressly noted midway

through the email chain that he "removed the ambulance company's representative from this

thread so that she is not accidentally made privy to internal communications."  *See*

DOE0001384.  This strongly suggests that DOE considered the agencies as external third parties

and not as DOE employees.  And finally, while RCA was certainly working closely with DOE

personnel to provide services to a students who had sued or who had threatened to sue DOE,

RCA's employees do not appear to be working on matters critical to litigation.  Rather, the

agencies are working closely on matters critical to DOE fulfilling its legal obligations to students

with special nursing and transportation needs.  In sum, DOE has failed to establish that RCA

employees are "so fully integrated into the" DOE that they can be considered de facto

employees.

   Notwithstanding the above, because the email communications also are work product,

the inclusion of the ambulance employee on the chains would not effectuate a waiver of work

product unless the communications were disclosed in a manner that is inconsistent with the

purpose of the protection.  RCA is a contractor to the DOE and a critical partner in providing

necessary services.  Its interests are aligned with the DOE to ensure proper services are

provided.  There is no indication that sharing the particular communications was inconsistent with maintaining confidentiality.  Rather, the DOE was relying on RCA to assist it in complying with its legal obligations.  Therefore, the inclusion of the RCA employees on the communications did not effectuate a waiver of work product protection.

Some of the email chains in this group concern particular issues that arose with a nurse and with a particular type of chair and follow-up to address the issues or with arranging for the pick-up of the child.  These emails do not appear to be work product or privileged and can be segregated from the remaining emails.  For example, on the document with ending numbers 354939, the email from Barbara Drayton on October 13, 2017 at 4:08 p.m. to Parker Everett and the communications that followed from October 16-November 17, 2017 should be disclosed with the emails at the bottom of the chain from earlier dates and times redacted.[2]  Similarly, on the document with ending numbers 324534, the top two emails in the chain dated October 9, 2017 should be disclosed with the other emails redacted.[3]  The document ending in 344592 has communications at the top of the chain from October 13-November 3, 2017 that should be produced and the remainder redacted.[4]  The document ending in 293909 can be withheld in full.

Two emails[5] concern the same student in the above emails and address necessary follow-up with a nurse and are not privileged or protected work product.  No legal advice is conveyed or requested and the emails would have been written in similar form regardless of

---

[2] The document ending in 354918 can be similarly produced.
[3] The document ending in numbers 325310 can be similarly produced, showing emails from October 9-10, 2017 but redacting the remainder.
[4] The documents ending in 344807, 345468, 345470, can be similarly produced/redacted.
[5] These are the documents ending in 378366 and 378362.

the existence of the lawsuit.  Similarly, two emails[6] are simple communications confirming pick up of the same student as the above-discussed emails.  No legal advice is conveyed or requested and the emails would have been written in similar form regardless of the existence of the lawsuit.  These too must be produced.  The same analysis applies to documents ending in 308394, 326806, and 326786.

The last two emails[7] are work product insofar as one concerns follow-up from a court proceeding and another concerns a legal document needed to provide certain services to a student.  Both emails include representatives from USS.  For the same reasons inclusion of RCA representatives did not constitute a waiver of work product, the inclusion of the USS employees does not constitute a waiver.   The document ending in 319447 is also protected by attorney-client privilege.  Employees from DOE and USS are jointly discussing a legal document and coordinating a legal document for their mutual use related to a student with a pending/threatened litigation.  In this context, the inclusion of the USS employee would not constitute a waiver because the common interest document would protect both the DOE and USS.  This doctrine protects communications when parties share a common interest about a legal matter.  *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989).

## CONCLUSION

For the above reasons, DOE shall produce the documents, some in redacted form, as specified above.  DOE shall have until December 30, 2022 to comply with this Order.

---

[6] These are documents ending in 305655 and 308502.
[7] These end in 313397 and 319447.

**SO ORDERED.**

DATED:      New York, New York
              December 15, 2022

KATHARINE H. PARKER
United States Magistrate Judge